IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | CASE NO. 3:17-mj-54 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| WILLIAM R. DUNBAR, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the Court is the Government's motion for revocation of release order. (ECF No. 10.) After holding a second detention hearing, the Court now finds by clear and convincing evidence that the motion should be granted.

I.

The Government has filed the instant motion under 18 U.S.C. § 3145(a), which provides in pertinent part:

> Review of a release order.--If a person is ordered released by a magistrate judge . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order...

This Court has original jurisdiction over the charged offense set forth in the criminal complaint in this case. Thus, in conducting its review of the motion for revocation, this Court applies a *de novo* standard of review. *See United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985); *United States v. Oliver*, No. 16-40, 2016 WL 1746853, at *4 (W.D. Pa. 2016); *United States v. Harding*, No. 4:16-CR-00019-11, 2016 WL 7042974, at *2 (M.D. Pa. 2016); *United States v. Ocasio*, No. CR 15-83-05, 2016 WL 215230, at *1 (E.D. Pa. 2016).

1

II.

On September 21, 2017, a criminal complaint was filed against Defendant William Dunbar, charging him with making threats against the Vice-President in violation of 18 U.S.C. § 871. (ECF No. 1.) That same day, Defendant was arrested pursuant to a warrant (*see* ECF No. 2), and made his initial appearance before Magistrate Judge Pesto. (ECF No. 3.) Magistrate Judge Pesto ordered that Defendant be detained pending a detention hearing. (ECF No. 4.) The detention hearing took place on September 26, 2017. After hearing from the Government and Defendant, Magistrate Judge Pesto denied the Government's request to detain Defendant pending trial (*see* ECF No. 8), but stayed his decision pending a disposition of the instant appeal before this Court. This Court held a second detention hearing on October 3, 2017.

III.

According to 18 U.S.C. § 3142(e), a person shall be detained pending trial if, after a hearing, the judicial officer finds that no condition or combination of conditions will reasonably assure the person's appearance as required and the safety of any other individual and the community. In this case, the "primary reason" that the Government requests that Defendant be detained is because of the danger he poses to the community. (Trans. at p. 2, ¶¶ 18-20.)

The factors to be considered in determining whether to detain a defendant pending trial are set forth in 18 U.S.C. § 3142(g) and include:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime involving an explosive or destructive device;

(2) the weight of the evidence against the defendant;

2

(3) the history and characteristics of the defendant, including (a) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (b) whether at the time of the current offense, the defendant was on probation or completion of a sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's pretrial release.

The Pretrial Services Office prepared a report for use at the detention hearing. The "Assessment of Danger" portion of the report set forth the following as reasons that Defendant poses a risk of danger:

- Substance Abuse History;
- Mental Health History;
- Pattern of Similar Criminal Activity History; and
- Criminal History.

Pretrial Services recommended that Defendant be released on an unsecured bond under specified conditions. However, Pretrial Services lacked the benefit of the extensive evidence that has been uncovered during the subsequent investigation into Defendant's alleged offense, Defendant's history and characteristics, and the danger that Defendant poses to the community.

### IV.

For purposes of this appeal, the Court has reviewed the transcript of the September 26, 2017 detention hearing (ECF No. 11), as well as the other documents in the

3

record. This Court also held a second detention hearing on October 3, 2017. After carefully reviewing the entire record in this case, the Court makes the following findings.

The first factor the Court considers—the nature and circumstances of the offense charged—does not clearly weigh in favor of, or against, Defendant's detention. On the one hand, the offense does not involve "an explosive or destructive device." But the crime Defendant has been charged with is a very serious offense; Defendant threatened to kill the Vice President of the United States. Moreover, Defendant made this threat while in uniform as a national guardsman stationed on the very base where Vice President Pence would be arriving just days later. (Trans. p. 4, ¶¶ 18-20.) Furthermore, Defendant is known as being volatile and prone to violent outbursts, both on the military base where he served as a national guardsman[1] (*Id.* at p. 9, ¶¶ 3-17) and in the greater community.[2] (*Id.* at p. 18, ¶¶ 18-25; p. 19, ¶¶ 1-23.) Thus, the nature and circumstances surrounding this threat amplify the gravity of an already serious allegation.

---

[1] Fellow reservists described Defendant as having "roid rage," meaning that he would quickly go into a rage. (Trans. p. 9 ¶¶ 3-10.) According to information obtained by Mr. Heckman, "that behavior was seen somewhat regularly, or with some commonality while he was on the base. And that resulted in smashing things, breaking things, throwing things." (*Id.* at ¶¶ 6-10.) This behavior was so concerning that, "for the safety of Mr. Dunbar and for the physical safety of other national guardsmen and other people on the base... they removed his access to weapons... [and] basically isolated him on base to where he was by himself, but under the supervision of one particular NCO." (*Id.* at 13-15.) While Defendant was disarmed and isolated partially because he had previously expressed suicidal ideations (*Id.* at p. 8, ¶¶ 20-25), the decision to disarm and isolate him was also made "to ensure that he didn't harm—out of rage and anger—harm [sic] other guardsmen." (*Id.* at p. 9, ¶¶ 15-17.)

[2] According to Mr. Heckman, the general sentiment in the community is that Defendant has "extreme anger, extreme volatility. The ability to go, as I mentioned earlier, from 0 to 100 on the anger scale so quickly, and then come down from that so quickly into almost a depressive state of mind. That the imbalance there made it such that people didn't know what was going to happen next. That's the sense I would hear over and over." (*Id.* at p. 18, ¶¶ 18-25.) Moreover, community members repeatedly voiced their fear of Defendant (*Id.* at ¶¶ 4-6), and some of them detailed instances where they were physically harmed by Defendant. (*Id.* at ¶¶ 7-20.)

4

This Court finds that the nature and circumstances of the offense is neutral in this case, and does not provide much guidance about whether Defendant should be detained.

The second factor the Court considers—the weight of the evidence against the person—strongly weighs in favor of detention. On September 8, 2017, three eyewitnesses heard Defendant threaten to kill the Vice President. (*Id.* at p. 5, ¶¶ 18-23; p. 6, ¶¶ 2-25.) Two of the three eyewitnesses told Special Agent Keith Heckman that Defendant's threat was not conditional.[3] (*Id.* at p. 21.) Further, according to two NCOs who supervised Defendant during a break in Mr. Heckman's questioning of Defendant on September 9, 2017, Defendant told them that what he had actually said the previous day is "I will kill the Vice President if someone paid... me enough money [*sic*]." (*Id.* at p. 13, ¶¶ 22-25.) When Mr. Heckman questioned Defendant about Defendant's statement reported by the NCOs, Defendant clarified that when he had stated that he would kill the Vice President if "someone" paid him enough money, he meant if "another country" paid him enough money. (*Id.* at p. 14, ¶¶ 2-9.) However, Mr. Heckman doubted the veracity of Defendant's account of what he had said the day before, because this was the third different story that Defendant gave Mr. Heckman regarding exactly what he had said.[4] (*Id.* at ¶¶ 7-13.)

---

[3] The first witness told Mr. Heckman that Defendant stated "I'll kill the Vice President" or "I'll kill the V.P." (*Id.* at p. 21, ¶¶ 7-12.) The second witness said that Defendant stated "I'd kill the V.P. or [I'd kill] the Vice President." (*Id.* at ¶¶ 14-16.) The third witness, who Mr. Heckman found particularly credible, said that Defendant stated "'F' the V.P... I'll make a terroristic threat, I'll kill him. I don't give a [s*it] there's nothing they're going to do." (*Id.* at ¶¶ 17-24.)

[4] Defendant first stated that he did not remember making any threats against the Vice President. (*Id.* at p. 12, ¶¶ 4-10.) Later on, Defendant stated "[w]ell, what I said yesterday was words to the effect of 'this would be the perfect opportunity for someone to do something,'" meaning to "assassinate or kidnap the Vice President." (*Id.* at ¶¶ 11-19.) As stated above, Defendant changed his answer again, and stated that he had said that he would kill the Vice President, but only if another country paid him enough.

5

This Court finds that there is strong evidence against Defendant, and that this factor clearly weighs towards Defendant being detained.

The third factor—the history and characteristics of the person—strongly weighs in favor of detention.

Defendant has a history of violence and rage; he was adjudicated delinquent of indecent assault as a minor (*Id.* at p. 14, ¶¶ 15-24), and was twice convicted of summary offenses for disorderly conduct, at least one resulting from road rage. (*Id.* at p. 16, ¶¶ 10-15; p. 14, ¶¶ 15-16.) Moreover, Mr. Heckman learned about several alleged instances violent conduct that were not reported to the police. Specifically, one witness reported that Defendant beat him up so badly that he required hospitalization. (*Id.* at p. 19, ¶¶ 10-12.) Defendant also fought with a college student, and during the brawl threatened to grab a gun that was in his car.[5] (*Id.* at p. 23, ¶ 14 – p. 24, ¶ 5.) At least one other witness told the investigator that Defendant brandished a weapon at him or her. (*Id.* at p. 24, ¶¶ 17-19.) While the details of these events are not known at this time, the limited evidence available at present establishes a clear pattern of Defendant's violent behavior.

Importantly, several witnesses stated that they feared for their physical safety because of their belief that Defendant would retaliate against them for providing information about Defendant. According to Mr. Heckman, the three reservists who reported Defendant's threats and/or their families all contacted the NCOs and a specific sergeant on the base and stated that they feared for their physical safety. (*Id.* at p. 10, ¶¶ 7-17.) These witnesses know Defendant well and, based on personal experience, believe that

---

[5] The date of this alleged incident is unknown to the Court.

he will retaliate against them for coming forward. (*Id.* at p. 14-18.) Military personnel are not the only ones who reported fearing that Defendant would retaliate. Several of the witnesses that Mr. Heckman interviewed stated that they feared that Defendant would come after them for cooperating with the investigation. (*Id.* at p. 19, ¶¶ 15-17.) One witness told Mr. Heckman that he or she would not speak to him at all because Defendant was sure to retaliate. (*Id.* at ¶¶ 19-20.)

Furthermore, Defendant is known in the community as a volatile, angry person. The witnesses who Mr. Heckman interviewed uniformly described Defendant as a volatile person who displayed "extreme anger." (*Id.* at p. 18, ¶¶ 19-20.) While Defendant's family members did not report fearing Defendant, at least one of them stated that Defendant is "not right in the head" and "needs help." (*Id.* at p. 20, ¶¶ 7-8.)

In light of the above-mentioned evidence about Defendant's violent actions, volatile personality, and reputation in the community as being prone to anger, this Court finds that Defendant's history and characteristics strongly weigh towards his detention.

The fourth factor—the nature and seriousness of the danger to the community— also weighs in favor of detention. As described above, Defendant has a documented history of violence, and evidence uncovered during this investigation indicates that Defendant has acted violently on multiple occasions that have not been reported to the police. Moreover, the three witnesses who reported Defendant's threats against Vice President Pence, and several of the community members who Mr. Heckman interviewed during his investigation, fear that Defendant will retaliate against them. Finally,

Defendant has a reputation in the community as someone who is volatile and prone to extreme anger.

The Court finds that Defendant poses a serious threat to the community, and that this factor weights in favor of detention.

V.

Accordingly, after carefully considering the circumstances in this case, the Court finds that the factors set forth in 18 U.S.C. § 3142(g) weigh heavily in favor of detention. There is clear and convincing evidence that no conditions or combination of conditions would reasonably assure the safety of others. Therefore, this Court orders Defendant detained pending trial.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | CRIMINAL NO. 3:17-mj-54 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| WILLIAM R. DUNBAR, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**AND NOW**, this 6th day of October 2017, for the reasons set forth in the accompanying memorandum opinion, **IT IS HEREBY ORDERED** that the Government's appeal and motion for revocation of the Magistrate Judge's order of pretrial release (ECF No. 10) is **GRANTED**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE